JOURNAL ENTRY and OPINION
Tamara A. appeals from a judgment of the juvenile division of the common pleas court granting permanent custody of her minor son, Michael A., to the Cuyahoga County Department of Children and Family Services. On appeal, she challenges the court's neglect order, argues that the guardianad litem failed to file a written report or otherwise faithfully discharge her duties, and claims that CCDCFS's case plan did not have a binding effect because the parents had not signed it and the court had not journalized it prior to the dispositional hearing. After reviewing the record, we have concluded that the mother failed to file a timely appeal from the neglect order and that the trial court properly granted permanent custody to CCDCFS; accordingly, we affirm the judgment of the juvenile court.
The record reveals that, on April 9, 2000, the mother gave birth to Michael A. During her pregnancy, the mother, who had a history of drug abuse, tested positive for Benzyldiazaphine; therefore, the juvenile court immediately granted CCDCFS protective supervision of Michael.
In June, both the mother and the father submitted to drug tests; the mother tested positive for cocaine and PCP, and the father tested positive for PCP.
On July 27, 2000, CCDCFS filed a complaint for neglect and permanent custody of Michael A. The next day, the juvenile court appointed Patricia Plotkin, Esq., to serve as the child's guardian ad litem.
Subsequently, CCDCFS filed a proposed case plan with the court which called for the mother to participate in substance abuse treatment, submit to random drug tests, undergo a psychological evaluation and counseling, and attend parenting classes. The parents, however, never signed this case plan nor did the court journalize it.
On July 27, 2000, CCDCFS filed a complaint for neglect and permanent custody. On August 3, 2000, both the mother and father were arrested, and subsequently indicted, for possession of crack cocaine.
The court conducted an adjudicatory hearing on November 6, 2000, where a social worker, Shaunna Lee-McMillan, detailed the parents' history of drug abuse. She also testified that when CCDCFS removed Michael A. from the home after getting the results of the drug tests, she could locate no clothes for the three-month-old child and only a partial can of baby formula. After the hearing, the court adjudicated the child to be neglected.
Subsequent to the removal of Michael A., the mother continued her noncompliance with the case plan. Further, neither parent regularly exercised visitations with their son. The mother only attended ten of twenty visits, and neither parent attended the last visitation because they were "tired."
The court conducted the dispositional hearing on May 16, 2001, and in a journal entry dated May 21, 2001, the court granted permanent custody of Michael A. to CCDCFS. Tamara, his mother, filed a timely notice of appeal from the dispositional order, raising four assignments of error for our review. The first and fourth state:
 I. THE JUVENILE COURT'S ADJUDICATION OF NEGLECT AS ALLEGED IN THE COMPLAINT, PURSUANT TO SECTION 2151.03(A)(2) OF THE OHIO REVISED CODE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW, SINCE THE GOVERNMENT FAILED TO ESTABLISH BY CLEAR AND CONVINCING EVIDENCE THAT MICHAEL A. WAS A NEGLECTED CHILD.
 IV. THE JUVENILE COURT COMMITTED PLAIN ERROR WHEN IT EXPLICITLY CONSIDERED DISPOSITIONAL ALLEGATIONS IN ITS FINDINGS SUPPORTING THE NEGLECT ADJUDICATION.
Although appealing from the dispositional order, Tamara here challenges the court's finding during the adjudicatory proceeding that she neglected Michael A.; however, she never filed a timely notice of appeal from the neglect order as required by App.R. 4(A).
The syllabus of In re Murray (1990), 52 Ohio St.3d 155, 556 N.E.2d 1169, states:
 An adjudication by a juvenile court that a child is "neglected" or "dependent" as defined in R.C. Chapter 2151 followed by a disposition awarding temporary custody to a public children services agency pursuant to R.C. 2151.353 (A)(2) constitutes a "final order" within the meaning of R.C. 2505.02
and is appealable to the court of appeals pursuant to R.C. 2501.02.
Although the legislature subsequently amended the final order statute, R.C. 2505.02, effective July 22, 1998, the revised version of Subsection (B)(1) of this statute is substantially similar to the language of the prior statute interpreted in Murray, and, therefore, the reasoning of that case is still applicable. Prior to amendment, R.C. 2505.02 defined "final order," inter alia, as "[an] order that affects a substantial right in an action which in effect determines the action and prevents a judgment * * *." As currently written, R.C. 2505.02 provides the same two-part test in Subsection (B)(1):
 (B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
 (1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment.
In Murray, the court determined that even the temporary custody of a child "is an important legal right protected by law and, thus, comes within the purview of a `substantial right' for purposes of applying R.C. 2505.02." Id., 52 Ohio St.3d at 157. As for the second prong of the final appealable order test, the Murray court determined that a neglect order which includes an award of temporary custody to the government in effect determines the action and prevents a judgment. The court reasoned as follows at page 158:
 * * * Initially, we note that the designation of the custody award as "temporary" is not controlling. Generally, the question of whether an order is final and appealable turns on the effect which the order has on the pending action rather than the name attached to it, or its general nature. Harvey v. Cincinnati Civil Serv. Comm. (1985), 27 Ohio App.3d 304, 305, 27 OBR 360, 362, 501 N.E.2d 39, 41; Systems Construction, Inc. v. Worthington Forest, Ltd. (1975), 46 Ohio App.2d 95, 96, 75 O.O. 2d 79, 80, 345 N.E.2d 428, 429.
* * *
 Moreover, if the agency were to seek permanent custody of the child, R.C. 2151.414(A) provides, inter alia, as follows:
 "The adjudication that the child is an abused, neglected, or dependent child and the grant of temporary custody to the agency that filed the motion shall not be readjudicated at the hearing and shall not be affected by a denial of the motion for permanent custody." (Emphasis added.)
 In effect, a parent would be denied the opportunity of appellate review of the trial court's finding of neglect or dependency until such time, if ever, as an award of permanent custody is made to the agency. In that event, it is likely that the situation of the child would be markedly different from that time when temporary custody was initially awarded to the agency.
Based on the following, we have concluded that the neglect order in this case, which also continued the temporary custody of Michael A. by CCDCFS, constituted a final appealable order when the court issued it on November 9, 2000. As such, Tamara had thirty days from that date to appeal from that determination. Instead, she appealed on June 20, 2001 and referenced the November 9, 2000 neglect finding.
This court has consistently rejected this type of "bootstrapping,"i.e., the utilization of a subsequent order to indirectly and untimely appeal from a prior final appealable order; we consistently have held that this practice "is procedurally anomalous and inconsistent with the appellate rules which contemplate a direct relationship between the order from which the appeal is taken and the error assigned as a result of that order." State v. Gray (May 24, 2001), Cuyahoga App. No. 78467, unreported, quoting State v. Church (Nov. 2, 1995), Cuyahoga App. No. 68590, unreported.
Accordingly, we are without jurisdiction to review the first and fourth assignments of error, which relate to the neglect finding of November 9, 2000. Therefore, we summarily dismiss the same.
 II. THE JUVENILE COURT COMMITTED REVERSIBLE ERROR BY AWARDING PERMANENT CUSTODY OF MICHAEL A[.] TO CCDCFS SINCE THE GUARDIAN AD LITEM FAILED TO EVER SUBMIT A WRITTEN REPORT OR OTHER WISE (SIC) MAKE HER RECOMMENDATIONS, IF ANY, KNOWN TO THE PARTIES OR THE COURT.
The mother contends that the juvenile court committed reversible error by not discharging Patricia Plotkin, Michael A.'s guardian ad litem,
urging that Plotkin failed to faithfully perform her duties and failed to submit a written report to the court. The state counters that Plotkin actively participated in the proceedings and points out that the mother failed to object to Plotkin's conduct in the trial court and has therefore waived presentment of these arguments on appeal.
R.C. 2151.281(D) provides in pertinent part:
 The court shall require the guardian ad litem to faithfully discharge the guardian ad litem's duties and, upon the guardian ad litem's failure to faithfully discharge the guardian ad litem's duties, shall discharge the guardian ad litem and appoint another guardian ad litem. * * *
R.C. 2151.281(I) set forth the duties of a guardian ad litem as follows:
 The guardian ad litem for an alleged or adjudicated abused, neglected, or dependent child shall perform whatever functions are necessary to protect the best interest of the child, including, but not limited to, investigation, mediation, monitoring court proceedings, and monitoring the services provided the child by the public children services agency or private child placing agency that has temporary or permanent custody of the child, and shall file any motions and other court papers that are in the best interest of the child.
In addition, R.C. 2151.414(C) requires that the guardian ad litem
submit a written report to the court prior to or at the time of the adjudicatory hearing. We will not reverse the juvenile court's decision regarding whether a guardian ad litem faithfully exercised her duties absent an abuse of discretion. Accord Dull v. Kingsley (Dec. 21, 1998), Preble App. No. CA97-12-032, unreported, citing In re Dodson (Mar. 4, 1996) Shelby App. No. 17-95-19, unreported.
Further, in the case of In re Coyne (Apr. 29, 1999), Cuyahoga App. Nos. 73798, 73799, unreported, we noted that the failure to object to the actions and performance of the guardian ad litem at trial constituted waiver of this error for appeal. Likewise, as for the guardian adlitem's failure to file an expert report, we have held that "[t]he failure to object to this procedural irregularity is a waiver of error."In re Davis (June 14, 2001), Cuyahoga App. No. 78810, unreported, citingIn re Hauserman (Feb. 3, 2000), Cuyahoga App. No. 75831, unreported.
Here, the mother acknowledges that she did not object to Plotkin's performance as Michael A.'s guardian ad litem during the juvenile court proceedings; however, she maintains that Plotkin's alleged malfeasance in this case constitutes plain error. "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus.
No such exceptional circumstances exist in this case. The mother argues that Plotkin "apparently failed to investigate or mediate the case, file motions in the best interest of the child, make oral motions in the best interest of the child, monitor case plan services, review the placement of the child, or submit an oral or written recommendation." However, most of these allegations are unsupported by the record; rather, the record reveals that Plotkin participated in the adjudicatory and dispositional hearings, questioning and cross-examining witnesses; that Plotkin requested an in camera conference at the conclusion of the dispositional hearing; and that she then told the court she would submit a written report within the week.
Under these circumstances, notwithstanding Plotkin's failure to submit such a written report, we have concluded that the juvenile court's retention of her as Michael A.'s guardian ad litem did not constitute plain error. Accordingly, we reject this assignment of error.
 III. THE JUVENILE COURT'S TERMINATION OF PARENTAL RIGHTS OF MOTHER WAS PREMATURE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW, AND MOTHER WAS DENIED DUE PROCESS OF LAW, WHEN THE COURT PROCEEDED AS IF THE PARENTS HAD FAILED TO COMPLY WITH THE TERMS OF A JOURNALIZED CASE PLAN, WHEN IN FACT THE COURT HAD NOT YET HEARD EVIDENCE ON THE CONTENTS OF THE PROPOSED CASE PLAN IN VIOLATION OF OHIO LAW, AND THEREFORE, PRIOR TO THE DISPOSITIONAL HEARING, THE CASE PLAN WAS MERELY A SUGGESTION TO THE PARENTS.
The mother also claims that CCDCFS failed to present clear and convincing evidence that it ever implemented a binding case plan. She urges that the court should not have adopted the CCDCFS case plan at the adjudicatory hearing because Michael A.'s parents never signed it and the court never journalized it prior to the hearing. CCDCFS, on the other hand, asserts that its failure to get approval of the case plan prior to the dispositional hearing did not relieve the mother of her obligation to follow it and to remedy her drug and parenting problems.
R.C. 2151.412(D) provides in part:
 * * * If the agency cannot obtain an agreement upon the contents of the case plan or the court does not approve it, the parties shall present evidence on the contents of the case plan at the dispositional hearing. The court, based upon the evidence presented at the dispositional hearing and the best interest of the child, shall determine the contents of the case plan and journalize it as part of the dispositional order for the child. (Emphasis added.)
In this case, CCDCFS proposed and filed a case plan on August 14, 2000; this case plan, neither signed by the parents nor journalized by the court prior to the dispositional hearing, called upon the mother to participate in substance abuse treatment, submit to random drug tests, undergo psychological evaluation and counseling, and attend parenting classes.
Contrary to the mother's argument, R.C. 2151.412(D) sets forth a procedure whereby, absent agreement by the parents or journalization, the court can determine the contents of the case plan and journalize it as part of its dispositional order. The court followed that procedure in this case, as evidenced by its dispositional order:
 The Court further finds that reasonable efforts were made by the Cuyahoga County Department of Children and Family Services to prevent the continued removal of the child from the home[,] to[-]wit, substance abuse assessment and treatment referral, psychological evaluation referral, visitation schedule and parenting education classes referral. That following the placement of the child outside of the home and not withstanding reasonable case planning and efforts by the CCDCFS to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parents failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home.
In the instant case, in accordance with R.C. 2151.412(D), the court found that the parents repeatedly failed to substantially remedy the problems which caused Michael A. to be placed outside the home and journalized that finding, along with the components of the case plan, in its dispositional order.
Accordingly, we have concluded that termination of parental rights in the instant case is in conformity with the evidence present to the court and is not contrary to law; therefore, this assignment of error is not well taken, and we affirm the judgment of the trial court.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., P.J. and JAMES J. SWEENEY, J. CONCUR